## BANK OF EUFAULA *v.* JOHNSON.

1. A note purporting to be that of a married woman, but given in discharge of a pre-existing debt of her husband, renders her a surety within the purview of a statute prohibiting a married woman from entering into a contract of suretyship for her husband.

(a) The charge fairly submitted the issue whether the transaction in controversy was an independent loan to the wife, or was only colorable and intended to conceal the wife's suretyship; and the jury were properly instructed that if a married woman borrows money and mortgages her property to secure its repayment, and gives the money to her husband, the contract would be valid if her creditor is not a party to the arrangement; but if the husband induce his wife to borrow money to pay his debts and the husband's creditor is a party to the arrangement, the contract is illegal.

2. The allowance or rejection of an amendment to the pleadings is not good

ground of a motion for new trial, as an assignment of error on such rulings must be taken by direct exception. .

3. None of the grounds of the motion require a new trial, and the evidence supports the verdict.

MAY 16, 1917.

Equitable petition. Before Judge Littlejohn. Stewart superior court. June 26, 1916.

Mrs. M. L. Johnson filed a petition to enjoin the Bank of Eufaula from exercising a power of sale in a mortgage given by her to the bank, on the ground that the debt secured thereby was that of her husband and her obligation was that of surety, and was void because of the statute which prohibits a married woman from becoming directly or indirectly surety for her husband. Her contention as expressed in her pleadings, and supported by evidence, was, that her husband, being indebted to the Bank of Eufaula in the sum of $5416.79, applied to the bank for an additional loan; that the bank's officer proposed that if the plaintiff's husband would induce his wife to give the bank a mortgage upon her land for $4000 in part payment on his debt, the bank would make a new loan of sufficient size to cover the balance and an additional advance; that the bank's officer prepared the papers, and the husband took them to his wife, who signed the same at her home in Eufaula, Ala.; that upon the execution and delivery of the note and mortgage the bank passed $4000 to the credit of the wife on its books, and on that date she gave her husband a check for the amount, which was entered to the credit of the husband and applied to his debt; and that the transaction was not a loan to her, but a colorable device to cover up a suretyship for her husband. She prayed also for a cancellation of the mortgage as a cloud upon her title. The jury returned a verdict for the plaintiff, and the bank moved for a new trial, which was refused, and it excepted.

*G. L. Comer, T. T. James, M. C. Edwards, C. W. Worrill,* and *McDowell & McDowell,* for plaintiff in error.

*G. Y. Harrell,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The evidence disclosed that at the time Mrs. Johnson executed the mortgage she resided with her husband in Eufaula, Ala. The plaintiff is an Alabama corporation, and the transaction out of which this controversy arose occurred in the State of Alabama. Accordingly, the validity of the contract depends upon the law of

that State. The statute of Alabama declares that "the wife shall not directly or indirectly become a surety for the husband." Code of Alabama, § 4497. The contention of the bank is that the transaction amounted to an independent loan to Mrs. Johnson, and that she could use its proceeds for the payment of her husband's debt; which is allowable under the laws of Alabama. On the other hand, it is the contention of the plaintiff that although the transaction may have the superficial appearance of a loan to her, the evidence disclosed that it was a colorable transaction, and that the ostensible loan to her was but a device to conceal the real transaction between the bank, her husband, and herself. It is permissible, under the law of Alabama, for a married woman to borrow money and to give the same to her husband for the purpose of paying his debts. Sample *v.* Guyer, 143 Ala. 613 (42 So. 106). On the other hand, that same distinguished court has held that "no superficial appearance will be permitted to lead the court away from the true inwardness of the case. . . The fact that it is the creditor of the husband that advances the money to the wife to pay him her husband's debt, or that he accepts the obligation of the wife in discharge of the debt of her husband, or takes her as surety for her husband to better secure a loan made to him, is the essential thing that places his relation to the transaction in a different attitude from that of the person who, as an original business proposition, lends the wife money to do with as she pleases, and who derives no benefit or advantage, except such as grows out of the interest or profit he may secure from the loan of the money. When the wife executes her note to take up the debt of her husband, or borrows from the creditor of the husband on her own obligation the money, and hands it to him to pay her husband's debt, she is, in the meaning of the statute, assuming the debt of another, the same as if her name was signed as surety to a writing promising to pay the debt. The form of the transaction will not be allowed to defeat the statute, when the substance is an evident attempt to evade it." Lamkin *v.* Lovell, 176 Ala. 334, 339, 340 (58 So. 258). The statute of Georgia on this subject is very similar to that of Alabama, and there is a striking concordance in the decisions of the courts of these States in the interpretation of the respective statutes. *White v. Stocker,* 85 *Ga.* 200 (11 S. E. 604) ; *Freeman* v. *Mutual Building and Loan Association,* 90 *Ga.* 190 (15 S. E. 758) ; *Johnson* v.

*Leffler Company,* 122 *Ga.* 670 (50 S. E. 488). Complaint is made of several excerpts from the charge of the court, submitting the question as to whether the transaction was an independent loan to the wife, or was intended as an obligation of suretyship for her husband under the facts as disclosed at the trial. We think this issue was fairly submitted to the jury.

2. It has been frequently decided that objections to the allowance or rejection of amendments to pleadings are the subject-matter of direct exceptions, and have no place as grounds of a motion for new trial. *Carswell* v. *Smith,* 145 *Ga.* 588 (89 S. E. 698).

3. The motion for new trial contains numerous grounds. We have carefully examined them, and no new or novel question is presented, and it would not be profitable to discuss each one seriatim. Suffice it to say that, considered either singly or collectively, no sufficient ground for new trial is made to appear. The verdict is supported by the evidence.

*Judgment affirmed. All the Justices concur.*